UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID C. JUAREZ,

                Plaintiff,

v.

SGT. ANDERSON,

                Defendant.

Case No. 21-CV-1091-JPS

**ORDER**

      Plaintiff David C. Juarez, formerly an inmate confined at Racine County Jail, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendant violated his constitutional rights. ECF No. 1. On October 7, 2021, Plaintiff filed a motion for a protective order. ECF No. 7. On December 28, 2021, Plaintiff filed a notice of change of address–indicating he was no longer incarcerated–along with a motion for e-filing privileges. ECF Nos. 10, 11. On June 17, 2022, Plaintiff filed a motion requesting review of the case to be heard. ECF No. 12. On August 3, 2022, Plaintiff filed a motion for order to accept verified complaint and a notice of change of address. ECF No. 15.

      Plaintiff's motion for a protective order requests that the Court remove him from Racine County Jail; the Court liberally construes the motion as request for preliminary injunctive relief. *See* ECF No. 7. Plaintiff's most recent notice of change of address, ECF No. 15, indicates that Plaintiff is no longer incarcerated. As such, the Court will deny Plaintiff's motion for a protective order as moot. *See Maddox v. Love,* 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic

possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains").

The Court will deny Plaintiff's motion for e-filing privileges, ECF No. 11, without prejudice. Plaintiff states that the reason he would like e-filing privileges is because his living conditions have been unstable. E-filing by individuals not in custody generally is limited to members of the bar. Non-incarcerated individuals must have a PACER account, a computer, a program to create PDF documents, and a scanner. There are also charges associated with using a PACER account. At this time, the Court declines to extend e-filing privileges to Plaintiff. If his living conditions stabilize, Plaintiff may renew his motion and should describe to the Court how he would be able to satisfy the e-filing requirements.

The Court will grant Plaintiff's motion requesting review of the case, ECF No. 12, as this Order addresses Plaintiff's outstanding motions. The Court will, however, deny Plaintiff's motion for order to accept verified complaint as it is not clear what relief Plaintiff seeks. Plaintiff's motion attaches a lengthy complaint of over one-hundred pages filed in Racine County Circuit Court. He requests that the Court accept the verified complaint "under indigents proclaimed by Mr. Juarez and granted under Case No: 21cv1090, 21cv1091, 21cv1092, and 21cv1161." ECF No. 15. To the extent that Plaintiff wishes to file an amended complaint in his cases, Plaintiff is instructed to refile his motion in accordance with the procedures outlined in Federal Rule of Civil Procedure 15 and Local Civil Rule 15.

The remainder of this Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

1.  **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On October 4, 2021, the Court waived payment of the initial partial filing fee. ECF No. 6. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 3. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.  **SCREENING THE COMPLAINT**

    **2.1 Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names only one defendant, Sgt. Anderson, in this action. ECF No. 1. at 3. Plaintiff's allegations span a time period from January 1, 2019 through November 8, 2020. *Id.* at 4. Sgt. Anderson was the chief officer in charge of inmate housing status. *Id.* Plaintiff alleges that Sgt. Anderson illegally housed him in administrative segregation on various dates without justification. *Id.* Starting on January 1, 2019, Plaintiff was housed in segregated status for five days. *Id.* On September 6, 2019, Plaintiff's placement in segregation lasted approximately three weeks. On January 28, 2020, Plaintiff's placement in segregation lasted approximately thirty days. On November 8, 2020, Plaintiff was housed in segregation for an entire year. *Id.* The living conditions in segregation were "single man 23 hour lock

down." *Id.* at 5. Plaintiff was allowed only one hour a week to call his family, write requests, take a shower, and use any cleaning materials. *Id.* The segregated housing unit contained no tv or radios. *Id.* The segregated housing units also get unbearably loud with inmates screaming all hours of the night. *Id.* at 6. As a result of his placement, Plaintiff suffered from rapid thoughts, insomnia, loss of appetite, internal anger, and suicidal thoughts. *Id.*

On February 15, 2021, Plaintiff refused to move cells and was sprayed with pepper spray and extracted out of his cell. Plaintiff was given 30 days of discipline as punishment. *Id.* After showering off the pepper spray, Plaintiff was left traumatized in his cell with nothing but a mattress and was barely able to open his eyes. *Id.* About two hours later, Plaintiff was given his property, but his headphones and multiple other items were missing. *Id.* During this time, Plaintiff was refusing his mental health medications and was dealing with manic behavior, rapid thoughts, depression, anxiety, and compulsive behavior. *Id.* at 9. About thirty minutes after Plaintiff received his property, he decided to hang himself with his bed sheet. *Id.*

Sgt. Anderson was aware that Plaintiff wanted to commit suicide since he had seen Plaintiff's noose hanging from his cell on multiple occasions over a thirty-day period. *Id.* Plaintiff alleges that this sign put Sgt. Anderson on notice of his duty to protect Plaintiff from the suicide risk. *Id.* Plaintiff learned that he was hanging for six minutes before anybody responded to his suicide attempt and that he was found with a blue and purple face, bloody nose, hanging from a sheet off the floor and unresponsive. *Id.* Plaintiff was left to free fall with his full weight when cut from the noose; he fell on the concrete floor and injured his head and face. *Id.* Medical staff in the facility responded to the incident. *Id.* at 10.

After Plaintiff returned from a hospital outside the jail, he was placed in a suicide vest and housed in the facility intake unit for over 60 days. *Id.* Plaintiff went over 120 days without a "jail discipline" and staff re-assessed him every seven days. *Id.* Plaintiff verbally protested numerous times that it was illegal to house him in administrative segregation without any discipline hearing. *Id.* Plaintiff was not allowed to appeal any of his jail discipline or his inhumane living conditions in segregation. *Id.* at 11. Plaintiff maintains that he was not allowed to file any prisoner grievances about the segregated housing status due to the unavailability of grievance forms in the jail. *Id.* Up until January 11, 2021, prisoners were instructed to write grievances on inmate request slips with no formal grievance procedure. *Id.* On January 11, 2021, the jail provided a grievance button on the inmate kiosk; this option only produced a comment box on the form and did not provide a procedure to investigate or call witnesses. *Id.* Staff responded that they would look into it but then would close the so-called grievance without any process. *Id.*

On September 3, 2021, Plaintiff was housed naked in a blue suicide uniform for protesting to receive his legal mail. *Id.* at 12. On September 8, 2021, Plaintiff was still housed in that condition and he received the photocopies of the complaint in this case. *Id.* at 13. At lunch, Sgt. Anderson placed himself needlessly as an officer to hand out lunch trays. *Id.* Sgt. Anderson served Plaintiff his lunch tray in an aggressive manner and said Plaintiff would not be eating because he refused his lunch tray. *Id.* After thirty minutes of banging and screaming, Plaintiff received his food. *Id.*

On September 9, 2021, after a full week of observation status, Plaintiff demanded to speak with whoever placed him on that status. *Id.* A mental health worker came by and told Plaintiff he would speak to Admin. *Id.* Another staff member told him his status was under mental health. *Id.*

Page 6 of 13
Case 2:21-cv-01091-JPS   Filed 08/05/22   Page 6 of 13   Document 16

At about 4:00 p.m., Plaintiff placed toilet paper on the top half of his door window. *Id.* at 14. Sgt. Anderson came to address the situation and antagonized Plaintiff with threats of an extraction. Plaintiff told Sgt. Anderson to "go suit up the C.E.R.T. team and then I'll lay down and cuff up." *Id.*

As a result of his desperate depression, Plaintiff then showed Sgt. Anderson three sharp objects and swallowed them. *Id.* Sgt. Anderson opened Plaintiff's cell without riot gear or staff awareness. *Id.* Plaintiff sprung up to subdue Sgt. Anderson and get his taser; Plaintiff wanted to prevent Sgt. Anderson from shooting him with the taser in an outraged retaliatory manner. *Id.* Additional staff responded, and the struggle lasted only about fifteen seconds. *Id.* Another officer tased Plaintiff in the face. *Id.* Plaintiff fell to the floor and was tased again when not resisting or yelling. *Id.* at 15. Other officers restrained Plaintiff and medical came to question him about the sharp objects. *Id.*

Plaintiff was concerned about internal bleeding as a result of his swallowing the sharp objects. *Id.* Staff was supposed to put Plaintiff through the body scanner and to be assessed by medical for transfer to an outside hospital; staff took none of these precautions. *Id.* After about an hour and twenty minutes, a staff member came to check on Plaintiff but did not offer him any water. *Id.* After about two and a half hours, Plaintiff was finally taken out of the chair and allowed to shower. *Id.* at 16. Plaintiff was placed in a green suicide tunic and placed in his cell on suicide status. *Id.* As of September 16, 2021, Plaintiff had not received any type of facility discipline or outside criminal charges relate to this incident. *Id.* Plaintiff was still naked, scared/hurt, and housed in the 24-hour lit cell. *Id.* Officers refused to give the names of any of the individuals involved with this incident. *Id.*

Page 7 of 13
Case 2:21-cv-01091-JPS   Filed 08/05/22   Page 7 of 13   Document 16

### 2.3 Analysis

First, Plaintiff may proceed on a Fourteenth Amendment claim for a deprivation of liberty without due process against Sgt. Anderson. In order to state a due process claim, a plaintiff must have a protected liberty interest in remaining in the general population of the prison. "The Constitution itself does not create an interest in avoiding transfer within a correctional facility." *Townsend v. Fuchs,* 522 F.3d 765, 771 (7th Cir. 2008) (citing *Wilkinson v. Austin,* 545 U.S. 209, 222 (2005) and *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). However, the Supreme Court has established that disciplinary segregation can trigger due process protections depending on the duration and conditions of segregation. *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir. 2009) (240 days of segregation was sufficiently long to implicate a cognizable liberty interest if the conditions of confinement during that period were sufficiently severe).

In contrast, "[i]n some cases, [the Seventh Circuit] has described an inmate's liberty interest in avoiding segregation as very limited or even nonexistent." *Id.* Courts have deemed an inmate's liberty interest implicated only where the living conditions are far more restrictive. *See, e.g., Wilkinson,* 545 U.S. at 223–24, (inmate denied human contact and subjected to lights during every hour of confinement); *Gillis v. Litscher,* 468 F.3d 488, 490–91, 493–94 (7th Cir. 2006) (inmate in "Behavioral Modification Program" denied any bedding or clothing and deprived of nearly all human contact or sensory stimulation); *Westefer v. Snyder,* 422 F.3d 570, 589 (7th Cir. 2005) (inmate subjected to severe limitations on contact with others, showers, exercise, attorney visits, and access to personal property).

Here, Plaintiff alleges he was placed in administrative segregation on numerous occasions—once for 365 days—without a hearing or any process. He alleges various factors as to why his segregated housing was

significantly more restrictive than normal housing. At the pleading stage, Plaintiff has sufficiently stated a Fourteenth Amendment due process claim.

Second, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Sgt. Anderson for his indifference to the serious risk of Plaintiff's suicide. To prevail on a claim under the Eighth Amendment, plaintiff must provide evidence showing that: "(1) the harm that befell [him was] objectively, sufficiently serious and a substantial risk to his [] health or safety, and (2) the individual defendant[] w[as] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760–61 (7th Cir. 2006). "Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Id.* "[T]he defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Id.* "Liability cannot attach where 'the defendant[] simply w[as] not alerted to the likelihood that [the prisoner] was a genuine suicide risk.'" *Id.* (quoting *Boncher ex rel. Boncher v. Brown County*, 272 F.3d 484, 488 (7th Cir. 2001)).

Here, Plaintiff alleges that Sgt. Anderson was aware of the serious risk of Plaintiff's suicide based on seeing a noose in his cell on multiple occasions and taking no action during a thirty-day period. Plaintiff's factual allegations regarding this claim are sparse; however, at the pleading stage, the Court finds that Plaintiff may proceed on an Eighth Amendment deliberate indifference claim.

Finally, the Court notes the claims that will not allowed to proceed at this time. Plaintiff complains that his First Amendment rights have been

violated regarding the grievance process, or lack thereof, in Racine County Jail. Plaintiff does not, however, indicate any facts related to Sgt. Anderson's involvement with the grievance process. Section 1983 requires that an individual be personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Plaintiff may be able to amend his complaint if, through discovery, he is able to identify the staff involved in this deprivation. Similarly, although Plaintiff alleges facts related to force used by prison officials and a lack of adequate medical care following the incident on September 9, 2021, he does not indicate *who* took those actions. Should Plaintiff wish to proceed on claims against those individuals, Plaintiff should pursue identifying those individuals in discovery and the Court will consider any amended complaint identifying these unnamed individuals as justice requires, pursuant to Federal Rule of Civil Procedure 15.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Fourteenth Amendment Due Process claim against Sgt. Anderson; and

**Claim Two:** Eighth Amendment deliberate indifference claim against Sgt. Anderson regarding Plaintiff's serious risk of suicide.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 3, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for a protective order, ECF No. 7, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for e-filing privileges, ECF No. 11, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion requesting review of the case, ECF No. 12, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for order to accept verified complaint, ECF No. 15, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this Order upon Defendant Sgt. Anderson pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Defendant Sgt. Anderson shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** if Defendant contemplates a motion to dismiss, the parties must meet and confer before the motion is filed. Defendant should take care to explain the reasons why he intends to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile

or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendant files a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that Plaintiff must pay the $350.00 balance of the filing fee over time as he is able. His payments shall be clearly identified by the case name and number assigned to this action. Plaintiff may mail his payments to the Clerk's Office at Office of the Clerk, United States District Court, Eastern District of Wisconsin, 362 United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 5th day of August, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.